J-A04012-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL TIMMS | |
| Appellant | No. 1304 EDA 2020 |

Appeal from the Judgment of Sentence December 5, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0012279-2015

BEFORE:  STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:　　　　　　　　**FILED:  APRIL 16, 2021**

Appellant, Michael Timms, appeals from the judgment of sentence the Court of Common Pleas of Philadelphia County entered on December 5, 2016. On appeal, Appellant challenges the legality and the weight of the evidence supporting his sentence.  Upon review, we affirm.

The trial court summarized the relevant factual and procedural background as follows.

> On September 29, 2015, Randy Frazier ("Frazier") drove to his friend Bahiyah Beasley's ("Beasley") house at 12th and Huntingdon Streets in Philadelphia to pick up $50 that Beasley had borrowed from him earlier in the week.  Frazier arrived at Beasley's house at around 9:00 p.m., and she came outside to meet him.  Beasley gave Frazier the money, which he put in the cup holder in his car, and they talked for approximately ten minutes before he left.

_____

[*] Retired Senior Judge assigned to the Superior Court.

While stopped at a red light at 11th and Cumberland Streets, Frazier was rear-ended by a Chevy Impala. [Appellant] was driving the Impala, and two passengers were accompanying him. Frazier got out of his car to inspect the damage. [Appellant] remained in his car and asked if everything was okay. When Frazier said that his bumper was cracked, [Appellant] asked him to the side of the road.

Both drivers pulled over and got out of their respective cars to look at Frazier's bumper. [Appellant] disagreed with Frazier's assessment of the damage and said it was only a scratch. Frazier requested [Appellant]'s information to which [Appellant] replied, "[Y]ou are not getting shit." Frazier—who had his phone in his hand—told [Appellant] he was going to call the police. [Appellant] leaned back, reached for the right side of his waistband, and pulled out a silver revolver. He pointed the gun at Frazier, pressing it to his chest, and said, "[R]un me everything in your pocket or I'm a [sic] pop you." Frazier raised his hands as [Appellant] searched his pockets. [Appellant] also told Frazier to lift his pant legs to see if he had anything in his socks. He then took Frazier's watch.

In the meantime, the front seat passenger got out of the Impala and began looking through Frazier's car and emptied his wallet. [Appellant] told Frazier—while still holding him at gunpoint—to empty the backpack that was in the backseat. [Appellant] then took the laptop that was inside the bag. When he went to take Frazier's cell phone out of his hand, however, Frazier asked that he at least be able to keep his phone. After some debate between [Appellant] and the front-seat passenger, [Appellant] decided not to take the phone because it could be tracked by police. [Appellant] and the passenger returned to their car, and Frazier got in his and drove back to Beasley's house where he told her what happened and called the police.

When the police arrived, they drove Frazier around for twenty to thirty minutes looking for the Impala without success. They then took Frazier to Central Detective Division. While he was there, Frazier received a text message from Beasley with a photograph of [Appellant] asking if that was the man who had robbed him. Frazier immediately recognized [Appellant] and showed the picture to the assigned detective.

On October 14, 2015, Frazier met with Detective John McIver and identified [Appellant] in an array of six photographs of potential suspects. Following the identification, police secured a search warrant for [Appellant]'s residence. When they went to execute the warrant, an Impala with some front-end damage was parked outside. From inside [Appellant]'s house, police recovered a .38 silver revolver, loaded with three live rounds, and Frazier's laptop and watch. Police took [Appellant] into custody that same day.

After the jury found [Appellant] guilty of [robbery, 18 Pa.C.S.A. § 3701(a)(1)(ii), and theft by unlawful taking, 18 Pa.C.S.A. § 3921(a)], . . . [the trial court] sentenced [Appellant] to an aggregate term of ten to twenty years of incarceration. Immediately following sentencing, defense counsel was granted leave to withdraw her appearance. [The trial court] ordered new counsel to be appointed to represent [Appellant] for appeal purposes. On December 6, 2016, court appointed counsel, Erin Patricia Boyle, Esq., entered her appearance. On December 20, 2016, [Appellant] timely appealed to the Superior Court. On December 21, 2016, [the trial court] ordered [Appellant] to file a concise statement of errors complained of on appeal pursuant to Rule 1925(b) within twenty-one days. [Appellant] failed to comply. Therefore, on February 2, 2017, [the trial court] filed its Opinion, finding that [Appellant]'s appellate claims had been waived.

On March 20, 2017, upon consideration of [Appellant]'s "Motion *Nunc Pro Tunc* to Remand The Case to Trial Court And To Extend The Current 1925(B) Briefing Schedule," the Superior Court directed [the trial court] to provide the notes of testimony to [Appellant] within thirty days of the filing of the Order. [Appellant] was directed to file a supplemental Rule 1925(b) statement within twenty-one days of receiving the notes of testimony. In addition, [the trial court] was directed to file a supplemental opinion within thirty days after receiving [Appellant]'s Rule 1925(b) statement.

On April 10, 2017, [Appellant] timely filed a supplemental Rule 1925(b) statement. [The trial court] filed a supplemental opinion on August 3, 2017. On January 22, 2018, the Superior Court dismissed [Appellant]'s appeal for defense counsel's failure to file an appellate brief. On November 27, 2018, [Appellant] filed a *pro se* petition pursuant to the Post Conviction Relief Act ("PCRA"). Court appointed counsel, John P. Cotter, Esq., entered his

appearance on December 7, 2018 and filed an amended PCRA on behalf of [Appellant] on December 11, 2018, seeking reinstatement of [Appellant]'s post-sentence motion and direct appeal rights *nunc pro tunc*. The Commonwealth filed a response on February 25, 2019, agreeing that [Appellant]'s appeal rights should be reinstated *nunc pro tunc* but opposing reinstatement of his post-sentence rights *nunc pro tunc*. On February 27, 2019, this Court granted reinstatement of [Appellant]'s direct appeal rights *nunc pro tunc* and denied his request to file post-sentence motions *nunc pro tunc*. On March 7, 2019, [Appellant] filed a timely notice of appeal *nunc pro tunc* from the December 5, 2016 judgment of sentence. On December 20, 2019, the Superior Court remanded the case and directed this Court to reinstate [Appellant]'s post-sentence and direct appeal rights *nunc pro tunc*.

On January 23, 2020, this Court reinstated [Appellant]'s post-sentence rights *nunc pro tunc*. [Appellant] filed a post-sentence motion on January 27, 2020, which was denied by operation of law on June 24, 2020. The following day, [Appellant] timely appealed to the Superior Court. On July 1, 2020, this Court ordered [Appellant] to file a Rule 1925(b) statement within twenty-one days. [Appellant] filed his 1925(b) statement on July 3, 2020.

Trial Court Opinion, 9/1/20, at 1-4 (citations to the record omitted).

On appeal, Appellant raises two challenges, *i.e.*, a challenge to the legality of the sentence, and a challenge to the weight of the evidence.

Regarding the legality of the sentence, Appellant argues that since the jury did not find him guilty of a crime of violence as defined in 42 Pa.C.S.A. § 9714(g), the trial court improperly applied a second-strike mandatory minimum. We disagree.

Generally, a challenge to the application of a mandatory minimum sentence is a non-waivable challenge to the legality of sentence. ***See***, ***e.g.***, ***Commonwealth v. Hopkins***, 67 A.3d 817, 821 (Pa. Super. 2013) (as general

rule, application of mandatory minimum implicates legality of sentence and is non-waivable). Section 9714 of the Sentencing Code, in relevant part, reads as follows:

> Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement[.]

42 Pa.C.S.A. § 9714(a)(1). Section 9714(g) includes robbery (as defined in 18 Pa.C.S.A. § 3701(a)(1)(i), (ii) or (iii)) as a "crime of violence." 42 Pa.C.S.A. § 9714(g).

> As the trial court aptly noted, in the instant criminal action,

> [Appellant] was convicted of robbery, a crime of violence under subsection (g) of Section 9714. On August 23, 2007, prior to having committed the subject crimes, [Appellant] was sentenced on two first-degree robberies [trial court docket numbers 1303246-2006 and 1303232-2006]. The instant first-degree robbery, therefore, constituted his "second strike," requiring imposition of the mandatory ten to twenty-year sentence.

Trial Court Opinion, 9/1/20, at 5.

Appellant does not contest that he was convicted of robbery in 2007 or that the 2007 robbery conviction does not qualify as a crime of violence for purposes of Section 9714(g). Similarly, Appellant does not contest that the current robbery conviction qualifies as a crime of violence for purposes of Section 9714(g). As noted above, Section 9741(a)(1) requires a minimum sentence of at least ten years in prison if, at the time of commission of his current crime of violence, he has been convicted of a prior crime of violence.

Appellant's 2007 conviction for robbery thus triggered the imposition of a mandatory 10 to 20-year sentence for his present robbery conviction. Appellant's challenge to the legality of the sentence is, therefore, without any merit.

Next, Appellant challenges the weight of the evidence, arguing that the verdict shocks one's sense of justice because Appellant's witness (his wife) was more convincing than the victim. On this basis, Appellant asks us to find that the trial court abused its discretion in denying his weight of the evidence claim. We disagree.

Our Supreme Court has instructed as follows:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013) (citations and quotation marks omitted). This Court does not step into the shoes of the trial court to revisit whether the verdict was against the evidence. Rather, our task is to "analyze whether the trial court abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." *Id.* at 1056. A new trial should only be awarded "when the jury's verdict is so contrary to the evidence as to shock

one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Id.* at 1055.

The trial court noted that: (i) Victim testified that Appellant robbed him at gunpoint, and that Victim identified Appellant as the perpetrator in three separate instances; (ii) Detectives found Victim's laptop and watch in Appellant's home, and (iii) parked outside Appellant's residence was the Chevy Impala with front-edge damage. *See* Trial Court Opinion, 9/1/20, at 5-6.

Regarding the testimony of Appellant's wife, we note the record does not support Appellant's characterization of wife's testimony. Appellant's wife never said she was present at the time of robbery. In fact, she said that Appellant had an argument with Victim around the 26th or 27th of September, two or three days before the robbery. Wife said that on September 29, 2015, the date of the robbery, she "was not with [Appellant] and [she did not] know about the incident." N.T. 8/17/16, at 141. She said that her husband on that day "was out for the day, I don't know where he was." *Id.*

At any rate, the trial court noted that the "jury weighed the evidence presented, evaluated the testimony of the witnesses, and chose to give weight to [Victim]'s testimony. The verdict was not against the weight of the evidence." Trial Court Opinion, 9/1/20, at 7.

In light of the foregoing, and considering the applicable standards, we conclude that Appellant failed to show that the trial court abused its discretion in denying Appellant's motion for a new trial.

By claiming that Appellant's witness was more convincing than Victim, Appellant is in essence asking us to reweigh the testimony of Appellant's witness and substitute our judgment for that of the jury. As an appellate court, we may not reweigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004) ("This Court cannot substitute its judgment for that of the jury on issues of credibility"); *Commonwealth v. Gibson*, 720 A.2d 473, 480 (Pa. 1998) ("Credibility determinations are strictly within the province of the finder of fact; therefore, an appellate court may not reweigh the evidence and substitute its judgment for that of the finder of fact"); *Commonwealth v. Johnson*, 668 A.2d 97, 101 (Pa. 1995) ("an appellate court is barred from substituting its judgment for that of the finder of fact"); *Commonwealth v. Sanders*, 42 A.3d 325, 331 (Pa. Super. 2012) ("This Court is not permitted to reweigh such credibility determinations on appeal. A jury decision to credit certain evidence and reject other testimony is appropriate").

It is clear the jury chose to credit the Commonwealth's evidence pertaining to robbery and theft, as it was allowed to do, and Appellant failed to point to anything that would support a finding that the trial court abused its discretion in rejecting Appellant's weight of the evidence challenge.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/16/21